# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| In re:<br><br>STARLIGHT GROUP, LLC,<br><br>    Debtor. | Case No. 11-18241-RGM<br>(Chapter 7) |
| MICHAEL DORULA, ROBERT MELETTI and JULIE MELETTI,<br><br>    Plaintiffs,<br><br>vs.<br><br>KATHRYN FLANDERS,<br><br>    Defendant. | Contested Matter<br>(Objection to Proof of Claim No. 2 of Kathryn Flanders) |

## MEMORANDUM OPINION

This case is before the court on Kathryn Flanders' motion for reconsideration of the order disallowing her proof of claim. The motion will be denied.

## Procedural History

Michael Dorula, Robert Meletti and Julie Meletti filed objections to Kathryn Flanders' proof of claim which were sustained by an order entered on July 17, 2013. On October 21, 2013, Ms. Flanders filed a motion for reconsideration pursuant to Fed.R.Bankr.P. 3008 asserting that:

> In reviewing the Court's memorandum opinion, the Court made certain findings that, though perhaps reasonable based upon the testimony presented, are clearly in error. Simply stated, the testimonial assertions upon which the court based its findings were factually incorrect. Due to the erroneous assertions made and lacking documentary evidence to the contrary, the Court inquired as to the genesis of the sums in question and opined that these sums were originally generated as the result

1

of a fraudulent scheme (thus disqualifying the claimant from making her claim). The documentary evidence that is now available clearly shows that this is not the case.

Motion to Reconsider at 1 (Docket Entry 278). Her argument rests on seven documents she attached to her motion. All existed at the time of the trial but none was presented.[1]

### **Applicable Standard for Reconsideration of Disallowed Claim**

The threshold question is the standard for reconsideration of an order disallowing a claim. Ms. Flanders proceeds under Fed.R.Bankr.P. 3008 which provides that:

> A party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate. The court after a hearing on notice shall enter an appropriate order.

Rule 3008 implements 11 U.S.C. §502(j) which permits a claim that has been allowed or disallowed to be reconsidered for cause.[2] The statute is explicit that there must be cause for reconsideration. The Advisory Committee Note states that "Reconsideration of a claim that has been previously allowed or disallowed after objection is discretionary with the court."

"Reconsideration under 502(j) is a two-step process. First, a court must decide whether there is 'cause' for reconsideration. Then, the court must decide whether the 'equities of the case' dictate

---

[1] Ms. Flanders attached the following documents to her motion:
Exhibit A: Purchase contract from Flanders *et al* to Starlight dated January 28, 2010.
Exhibit B: Cardinal Bank approval letter dated February 4, 2010.
Exhibit C: MLS listing printout for resale of property indicating a listing date as of February 9, 2010.
Exhibit D: Settlement statement for transfer of property to Starlight dated March 31, 2010.
Exhibit E: Contact for resale of property by Starlight to third party purchaser dated April 8, 2010.
Exhibit F: Settlement statement for transfer of property from Starlight to third party purchaser dated May 5, 2010.
Exhibit G: Purchase contract from Ryan Homes to Fair Lakes Consulting Group, Inc. dated December 11, 2004 and settlement statement dated March 31, 2005.

[2] Section 502(j) states in part that "A claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case."

2

allowance or disallowance of the claim." *In re Durham*, 329 B.R. 899, 903 (Bankr.M.D.Ga. 2005) (citing *In re Rayborn*, 307 B.R. 710, 720 (Bankr.S.D.Ala. 2002)). In determining whether cause exists under Bankruptcy Rule 3008, courts look to Fed.R.Bankr.P. 9023 and 9024 which incorporate Fed.R.Civ.P. 59 and 60. *See U.S. v. Levoy (In re Levoy)*, 182 B.R. 827 (B.A.P. 9th Cir. 1995); *In re Colley*, 814 F.2d 1008, 1010 (5th Cir. 1987); *In re W.F. Hurley Inc.*, 612 F.2d 392, 396 n.4 (8th Cir. 1980). The burden of showing that there is cause for reconsideration is on the movant. *See Cassell v. Shawsville Farm Supply, Inc.*, 208 B.R. 380, 382 (W.D.Va. 1996) (courts "cannot permit reconsideration absent a showing of cause").

*United Student Funds, Inc. v. Wylie (In re Wylie),* 349 B.R. 204 (B.A.P. 9th Cir. 2006) sets out the generally accepted relationship between Rule 3008 and Rules 9023 and 9024. It states:

> When a motion is filed pursuant to Rule 3008 within the 10-day [now 14-day] period to appeal the original order allowing or disallowing the claim, the motion is analogous to a motion for a new trial or to alter or amend the judgment pursuant to FRCP 59 as incorporated by Rule 9023. *See Abraham v. Aguilar (In re Aguilar),* 861 F.2d 873, 874-75 (5th Cir.1988).
>
> When reconsideration under Rule 3008 is sought after the 10-day [now 14-day] appeal period has expired, the motion is subject to the constraints of FRCP 60(b) as incorporated by Rule 9024. *In re Aguilar,* 861 F.2d at 874–75; *S.G. Wilson Co. v. Cleanmaster Indus., Inc. (In re Cleanmaster Indus., Inc.),* 106 B.R. 628, 630 (9th Cir. BAP 1989).
>
> Thus, a motion under FRCP 59, which must be filed prior to the expiration of the 10-day [now 14-day] appeal period, may seek a reconsideration of the correctness and merits of the trial court's underlying judgment. *See, e.g., Osterneck v. Ernst & Whinney,* 489 U.S. 169, 174–77, 109 S.Ct. 987, 103 L.Ed.2d 146 (1989).
>
> However, when reconsideration is sought under FRCP 60(b) after the appeal period has expired, the party seeking reconsideration is not permitted to revisit the merits of the underlying judgment or argue that the trial court committed some legal error in arriving at that judgment. *See, e.g., Van Skiver v. United States,* 952 F.2d 1241, 1243–44 (10th Cir.1991), *cert. denied,* 506 U.S. 828, 113 S.Ct. 89, 121 L.Ed.2d 51 (1992). Instead, that party is limited to the narrow grounds enumerated

> in FRCP 60(b). *Id.* These grounds generally require a showing that events subsequent to the entry of the judgment make its enforcement unfair or inappropriate, or that the party was deprived of a fair opportunity to appear and be heard in connection with the underlying dispute.
>
> This distinction is drawn in order to preserve the finality of the order allowing or disallowing a claim. While Rule 3008 permits an order disallowing a claim to be reconsidered, the merits of the claim objection are no longer fair game unless the claimant first establishes a good excuse, cognizable under FRCP 60(b), for its failure to timely contest the objection.

*Id.* at 209-210. In *Wylie,* as in most reported cases, one of the parties in the claim objection litigation sought reconsideration. Looking to Rules 9023 and 9024 assists in finality, in bringing litigation to an end. This is particularly appropriate when one of the parties to the claim objection litigation seeks reconsideration. Having litigated the matter once, the parties should be bound by the result and the litigation should end unless one of the provisions of Rule 9023 or 9024 applies. This follows the process in non-bankruptcy litigation. In bankruptcy cases – unlike most non-bankruptcy litigation – there are multiple parties, not all of whom are usually involved in the claims objection litigation and may, at the time of the litigation, have no particular interest in the outcome. Moreover, claims may change during the course of a case, for example, collateral may be liquidated. The criteria for allowance may change. For example, a tardily filed claim disallowed in a chapter 13 case may be allowed under §726(a)(3) if the case is converted to chapter 7. *Cf.* 11 U.S.C. §§3002(c) and 726(a)(3). *In re Blakely,* 440 B.R. 443 (Bankr.E.D.Va. 2010). New parties may become interested in a claim previously allowed or disallowed, for example, a co-obligor or guarantor. Rules 9023 and 9024 may not address these additional considerations. The broader Rule 3008 is flexible enough to reach changed circumstances and by the requirement of cause, prevent unnecessary multiple challenges by numerous parties to a single creditor's claim.

**Discussion**

Ms. Flanders, a party to the claim objection litigation, sought reconsideration 96 days after the order disallowing her claim was entered. Fed.R.Civ.P. 59 which is incorporated into Rule 9023 is not applicable by its own terms because the motion was made more than 14 days after the entry of the order disallowing the claim. Even though Rule 9023 provides an exception for Rule 3008, there is no reason given why this motion could not have been made within 14 days after the entry of the order disallowing Ms. Flanders' claim. The hearing was concluded on June 17, 2013. The order was entered on July 17, 2013. She asserts that the court changed the direction of the hearing and the issues presented by asking witnesses questions. She asserts that she was not prepared for the new direction or issues. She should have known by the time the hearing concluded that the direction of the hearing and the issues presented were different from those for which she had prepared. She could have immediately sought information and documents that might have presented the matters in a different light. She found seven documents. She attached them to her motion. The documents relate to the two real estate closings which were held about March 30, 2010 and May 5, 2010 at Northern Virginia Title & Escrow, Inc., Ms. Flanders' brother-in-law's title company. The title company should have had complete files for both closings that should have been readily available to Ms. Flanders.[3] All the documents indicate that the motion to reconsider could have been made within 14 days after the entry of the order disallowing her claim. There is no explanation why this was not accomplished or could not have been accomplished.

Rule 9024 does not assist Ms. Flanders. She faces a similar difficulty under it. Ms. Flanders must show that she could not have "with reasonable diligence" discovered seven documents she now

---

[3] Scott Flanders, her brother-in-law and an attorney, signed her proof of claim.

presents in time to move for a new trial within 14 days under Rule 9023. *See* Fed.R.Civ.P. 60(b)(2) which is incorporated into Rule 9024. Without an explanation of why the motion could not have been filed earlier, no cause has been shown under Rule 3008, Rule 9023 or Rule 9024 for reconsideration.

Even if the order disallowing Ms. Flanders' claim were reconsidered, the claim would be disallowed on its merits. The claim was originally disallowed because it was a part of a fraudulent scheme. The court cannot distribute estate funds where doing so completes a fraud. *Pepper v. Lipton,* 308 U.S. 295, 312, 60 S.Ct. 238, 248 (1939) ("But when there is added the existence of a 'planned and fraudulent scheme' . . . the necessity of equitable relief against that fraud becomes insistent. No matter how technically legal each step in that scheme may have been, once its basic nature was uncovered it was the duty of the bankruptcy court in the exercise of its equity jurisdiction to undo it.").

There were two frauds: the fraud on Cardinal Bank in concealing the payment of sales proceeds to Brett and Scott Flanders; and the fraud on the bankruptcy court in which they concealed the fraudulent conveyances from them to their wives.[4]

Scott and Brett Flanders and a third individual owned a property on Lovett Drive. The real estate market changed and the house was worth far less than they owed on it. They sold it at a short sale orchestrated by Greg Holmes, a real estate agent, to Starlight Group with the consent of Cardinal Bank, the secured lender. Mr. Holmes marketed the property for Starlight and quickly sold it at a significant profit. The profit was split between Mr. Holmes and Starlight, the most significant portion going to Mr. Holmes. Mr. Holmes directed Spencer Brand, the principal of Starlight, to pay

---

[4] Both Brett Flanders, Kathryn Flanders' husband, and Scott Flanders, her brother-in-law, filed bankruptcy petitions in this court.

Scott Flanders and Brett Flanders each $20,400 out of his share of the profits. Shortly after Mr. Holmes' direction to Mr. Brand, Scott Flanders told Mr. Brand that he would likely file bankruptcy and instructed that the money be paid to Karen Flanders, his wife, and Kathryn Flanders, his brother's wife rather than he and his brother. Mr. Brand warned Scott Flanders that he should not pay the money to the wives, but Scott Flanders assured him that everything was proper. Moreover, Starlight was not to immediately disburse the money to the wives, but was to treat it as a loan to Starlight Group which it did. Scott Flanders' wife was paid her $20,400 shortly after her husband received his discharge in bankruptcy. Kathryn Flanders was not paid her $20,400 before Starlight filed bankruptcy. She filed a proof of claim for the money which was disallowed. The transfers to the wives were not disclosed on the Statement of Financial Affairs in either bankruptcy case.

    Ms. Flanders argues that Cardinal Bank knew that Starlight was going to make a profit on the transaction, and therefore the transaction could not be a fraud on Cardinal Bank. There is nothing wrong with Starlight making a profit on the completed transaction. The bank was aware that Starlight sought to make a profit on the transaction. The sales contract discloses this in paragraph 34 which states "The Seller grants the Buyer and/or their Agents/Representatives all the necessary rights to immediately list for sale, market, negotiate, and enter into a contract to lease or sell to a third party for a profit." Motion to Reconsider Exhibit A at ¶34. The short sale to Starlight benefitted the bank. It did not have to buy the property at the foreclosure sale, protect it, market it and run the risk of selling the property for less than Starlight was willing to pay for it. There was also a business reason. By taking a nonperforming loan off its books, it likely improved its capacity to lend money. There were good reasons for the bank to agree to a short sale. In doing so, it realized that Starlight would not enter into the transaction unless it could expect to make a profit in

the end. Starlights' profit was the cost to the bank for an immediate resolution of the nonperforming loan.

However, in calculating the price that the bank was willing to accept, it expressly provided that the borrowers were not to receive any proceeds from the sale. Motion to Reconsider Exhibit B at ¶5. This is important to a bank. If the balance of the loan is forgiven – which it was not in this case – any proceeds to the borrowers reduces the recovery to the bank. If the balance of the loan, the deficiency, is not forgiven – which it was not in this case – the bank will have to sue the borrower for a larger amount and runs the risk that it will not be collected. In any event, even if there is a full recovery, the recovery is delayed. In this case, both Scott and Brett Flanders filed bankruptcy and discharged their obligations to the bank.

Cardinal Bank's concern is shown by its requirement that neither Scott Flanders nor Brett Flanders, two of the bank's borrowers or mortgagors, receive any proceeds from the sale of the property. The short sale agreement which is attached to the motion for reconsideration states, "Mortgagor will receive $0.00 proceeds from this transaction. Any refunds or overages must be remitted to the first mortgage." Motion to Reconsider Exhibit B at ¶5. The court inferred this from the evidence presented at the trial, an inference that is no longer necessary. The additional documents proffered by Ms. Flanders makes this clear.

Moreover, there is nothing in the motion for reconsideration that suggests that the conclusion that there was bankruptcy fraud and perjury was incorrect. Mr. Holmes' testimony was explicit and confirmed by Mr. Brand. Mr. Holmes gave $40,800 to Scott Flanders and Brett Flanders. Thus, the transfer from them to their wives should have been reported on their Statement of Financial Affairs. The failure to do so has the elements of a fraudulent conveyance, bankruptcy fraud and perjury.

8

**Conclusion**

The motion for reconsideration will be denied because there is insufficient cause to reconsider the order disallowing Ms. Flanders' proof of claim. Moreover, if the motion were granted, the claim would be disallowed. The documents presented clearly show the frauds perpetrated. The motion for reconsideration of her claim will be denied.

Alexandria, Virginia
February 6, 2014

/s/ Robert G. Mayer
Robert G. Mayer
United States Bankruptcy Judge

copies to:

Richard G. Hall
Bennett A. Brown

18993